IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE SOLIZ,<br><br>    Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | CASE NO.  1:04-cv-06612 AWI TAG<br><br>REPORT AND RECOMMENDATIONS<br>ON PLAINTIFF'S APPEAL FROM<br>ADMINISTRATIVE DECISION |

Plaintiff Stephanie Soliz ("claimant" or "plaintiff") seeks judicial review of an administrative decision denying her claim for Supplemental Security Income ("SSI") benefits under the Social Security Act ("Act").  Pending before the Court is claimant's appeal from an administrative decision of the Commissioner of Social Security ("Commissioner").  Claimant filed her complaint and moved to proceed in forma pauperis on November 24, 2004.  (Docs. 1-2).  Her motion was granted on November 29, 2004.  (Doc. 3).  On August 4, 2005, claimant filed an opening brief (Doc. 13), but it was rejected by the Court for failure to comply with paragraph 11 of the Court's scheduling order.  (Doc. 14).  The Court ordered that an amended opening brief be filed by September 7, 2005 (id.), and claimant did so on that date.  (Doc. 15).  The Commissioner filed her opposition on October 11, 2005 (Doc. 16).  Claimant did not file a reply brief.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the Commissioner consented to proceed before a United States Magistrate Judge.  (Doc. 8).  Claimant declined to consent.  (Doc. 5).

**JURISDICTION**

On October 23, 2001, claimant filed an application for SSI benefits.  (Administrative Record

1  ("AR") 77-81). In her initial disability report, claimant alleged carpal tunnel syndrome in both
2  hands, and asthma, as her disabling conditions. (AR 100). Claimant's application was denied
3  initially and on reconsideration (AR 45-48, 51-54) and she therefore requested an administrative
4  hearing. (AR 55-56). That hearing was conducted before Administrative Law Judge ("ALJ") James
5  N. Baker on August 26, 2003. (AR 23-42). On November 28, 2003, ALJ Baker issued a written
6  determination finding that claimant was not disabled. (AR 17-22). The Appeals Council denied
7  review on September 24, 2004. (AR 6-8).

8  On November 24, 2004, 61 days after the Appeals Council denied review, claimant filed a
9  complaint with the district court pursuant to 42 U.S.C. § 405(g) and moved to proceed in forma
10 pauperis. (Docs. 1-2). This 61 day filing period facially violates section 405(g), which states that
11 judicial review is predicated on the filing of a civil action "within sixty days after the mailing" of
12 notice of decision. However, the "60-day requirement is not jurisdictional, but rather constitutes a
13 period of limitations." Bowen v. City of New York, 476 U.S. 467, 478 (1986). Moreover, the Social
14 Security Administration has extended the filing time by regulation to allow a filing within 60 days
15 after the date a claimant *receives* notice of the Appeals Council's final action. 20 C.F.R. §§ 404.981.
16 Such notice is presumed to have been received within five days after the date on the notice, 20
17 C.F.R. § 422.210(c), in which case a claimant has 65 days to file an appeal. Here, claimant timely
18 lodged her appeal on the 61st day after the Appeals Council's decision.

## STATEMENT OF FACTS

20 Claimant was born on April 2, 1967, making her 36 years old at the time of ALJ Baker's
21 decision. (AR 18, 22, 29). Claimant testified that she was married and lived with her husband, five
22 children (ages 3, 7, 8, 13 and 16) and brother-in-law. (AR 29). Claimant stated that she worked for
23 1½ years as a receptionist, a job which ended in May, 1998, and that she had no other work
24 experience. (AR 29-30). According to claimant, the reason that she cannot work is her hands: "It's
25 the hands. I have --I can't hold anything without dropping it. My hands get so stiff, swollen. It's
26 constantly in pain, I'm constantly in pain." (AR 31). Asked if she had other problems, claimant
27 reported that she had asthma and swelling of the ankles. (AR 31). As to her daily life activities,
28 claimant testified that she was able to attend to her personal care, and also did the laundry,

vacuuming, cooking, dishes, made beds, swept the yard, and took care of her three year old child during the day. (AR 32-33). However, according to claimant, she cannot continuously do household work, but must stop every 10 to 15 minutes when her hands start to swell so that she can sit down and elevate them for 15 to 30 minutes. (AR 34).

Claimant's medical records establish that she is obese, with a weight ranging from 316 pounds on December 27, 2001 to 334 pounds on March 31, 2003. (AR 155, 235). On December 30, 2000, claimant suffered a fall at a K-Mart. (AR 161). She was evaluated by Francis Lastufka, M.D. after the incident, but her x-rays were negative and her "wrist pain symptoms" later disappeared. (Id.) Several months later, on June 21, 2001, claimant reported to Dr. Lastufka a "recurrence of bilateral wrist pain" and also the onset of lower back pain. (Id.).[1] Dr. Lastufka diagnosed carpal tunnel syndrome, low back pain and asthma. (Id.). However, an x-ray the same date established no abnormality in claimant's lumbar spine area. (AR 159).

Claimant continued treatment with Dr. Lastufka, who dropped her "low back pain" diagnosis but continued to diagnose carpal tunnel syndrome both on July 6, 2001 and August 15, 2001 (AR 156-57). Due to claimant's persistent pain in the bilateral upper extremities, she was tested by Sherman N. Tran, M.D. on October 2, 2001. (AR 165-67). Dr. Tran reported that "[t]here is NO electrodiangostic [sic] evidence of bilateral median mononeuropathies across the wrists (carpal tunnel syndrome). There is NO electrodiagnostic evidence of bilateral ulnar mononeuropathies across the wrists or the elbows (cubital tunnel syndrome)" and further that "[t]here is NO electrodiagnostic evidence of a peripheral polyneuropathy." (AR 167). Several weeks later, Dr. Tran met with claimant again and diagnosed "[r]epetitive strain injury, bilateral upper extremities." (AR 164). Dr. Tran prescribed Elavil and suggested a cortisone injection, but the latter was declined by claimant. (Id.)

Subsequent to Dr. Tran's reports, claimant next visited with Dr. Lastufka on December 27, 2001. (AR 155). At this time, Dr. Lastufka dropped her carpal tunnel diagnosis, changing it instead to "[b]ilateral severe wrist tendinitis." (Id.) Dr. Lastufka also diagnosed asthma and back and knee

---

[1] During an evaluation by rheumatologist Kenneth E. Sack, M.D. on March 31, 2003, claimant reported that she suffered "swelling of bilateral hands with numbness and tingling, since May of 2001." (AR 234).

3

pain secondary to obesity. (Id.)

On January 15, 2002, claimant returned to Dr. Tran for follow-up and reported "persistent pain in the bilateral upper extremities." (AR 163). Dr. Tran examined claimant, observed no visible swelling in the bilateral upper extremities, but did note tenderness in the forearm extensor compartments. (Id.) Dr. Tran diagnosed "[u]pper extremity myofascial pain" and prescribed an increased dosage of Elavil. (Id.)

On June 25, 2002, claimant began treating at Golden Valley Health Centers. (AR 219). The assessment on that date was "hand pain." (Id.) On subsequent visits, claimant reported pain in her elbows radiating to her hands (July 5, 2002)(AR 218); some pain in her elbows with stiff hands and fingers (August 2, 2002)(AR 216); pain in both wrists with tingling and numb fingers (August 30, 2002)(AR 215); and severe hand pain (September 30, 2002)(AR 213). On October 25, 2002, claimant reported wrist pain, but an assessment showed full range of motion in her wrist. (AR 211). The report also noted negative results on an EMG test. (Id.) On November 22, 2002, claimant reported that her pain was still present, but better. (AR 209). Again on December 6, 2002, claimant reported hand pain. (AR 208). Claimant reported wrist pain on January 10, 2002 (AR 206) and arm pain on January 31, 2003 (AR 205). Wrist pain was noted again on April 4, 2003, and on April 11, 2003. (AR 227-28). Synopsizing claimant's assessments at Golden Valley Health Centers, Danielle Myers, M.D. stated on April 11, 2003, that claimant had "wrist pain" and "osteopenia." (AR 221).

During the course of treating claimant, Dr. Myers referred her for a rheumatology work-up. (AR 234). Upon examination of claimant on March 31, 2003, Kenneth E. Sack, M.D. did not issue a specific diagnosis, but rather suggested that additional testing might indicate one of several possible diagnoses (such as lupus or rheumatoid arthritis). (AR 235). Dr. Sack concluded that claimant "may also have a chronic pain syndrome if screen labs are negative." (Id.) Some testing was performed at the University of California San Francisco Medical Center on March 3, 2003, whereupon claimant was assessed with "chronic pain syndrome." (AR 249). Additional testing was performed by Warren D. Clift, M.D. (AR 246-47). Upon general examination of claimant on August 19, 2003, Dr. Clift's initial impression was that claimant had signs and symptoms most compatible with bilateral carpal tunnel syndrome. (AR 247). However, nerve conduction and EMG studies were

performed on claimant's upper extremities on the following day, August 20, 2003, and both test results were "[n]ormal." (AR 244). Dr. Clift therefore concluded that claimant "has no obvious neurological pathology." (AR 244-45). He did not schedule claimant for follow-up. (AR 245).

A consultative examination was ordered upon the filing of claimant's SSI application. On September 14, 2002, claimant was examined by Ralph H. Wood, M.D., who diagnosed "[m]orbid exogenous obesity," "[b]ronchial asthma under fairly good medical control," and "[p]robable bilateral carpal tunnel syndrome." (AR 181). Dr. Wood added the following comments to his report:

> "It is really difficult for me to tell what is wrong with the patient. She obviously needs more work-up before we can give any significant definitive diagnosis, both for collagen disease and carpal tunnel syndrome. Currently she's not using an ambulatory assistance device, and none is medically indicated. I doubt that she could stand and/or walk for more than 2 or 3 hours out of an 8-hour work period. Now I find no limitations in sitting. I would think she could still lift, push or pull up to 15 or 20 lbs. However, I am not sure how frequently she could do this. I do think currently she has hand movement and fine finger limitations. I honestly think that we don't know enough about this lady's general medical problem to make a permanent ruling in her case, and I would rather think that social security would want this patient re-examined in 6 to 8 months." (AR 181).

Also in the record is a medical consultant's Physical Residual Functional Capacity Assessment dated December 4, 2001, wherein it was stated that claimant's primary diagnosis was "tendonitis" [sic] (AR 137), that she was limited to "frequent, not constant" handling and fingering (AR 140), and that claimant was not fully credible and had no extreme impairment. (AR 144). A consultative Physical Residual Functional Capacity Assessment report by Sandra Clancey, M.D. dated October 4, 2002 also noted limitations in handling and fingering. (AR 148).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in

the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision maker proceeds to step two, which determines whether claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents claimant from performing work she has performed in the past. If claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics in original). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the

6

1  Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2)
2  that a "significant number of jobs exist in the national economy" which claimant can perform. Kail
3  v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting* Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied

7

in weighing the evidence and making the decision. <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987).

## ALJ'S FINDINGS

**Step One**

The ALJ found at step one that claimant had not engaged in substantial gainful activity since June 1, 2001, the alleged onset date of her disability. (AR 21).

**Step Two**

At step two, the ALJ concluded that claimant had "severe bilateral hand/wrist osteopenia with radiation to the shoulders, asthma, and obesity." (AR 21).

**Step Three**

At step three, the ALJ found that claimant's impairments did not meet or medically equal any of those included within the regulatory Listing of Impairments. (AR 21). <u>See</u> 20 C.F.R. § 404 Subpt. P, App. 1.

**Step Four**

The ALJ concluded at step four that claimant was precluded from doing the full range of her past relevant work as a receptionist. (AR 21).

**Step Five**

At step five, the ALJ presented four different residual functional capacity hypotheticals to vocational expert ("VE") Bill Wetzel for his review and comment. The first of these was based upon an agency medical consultant's report dated December 4, 2001. (AR 35, 137-44). This report stated that claimant could lift 20 pounds occasionally and 10 pounds frequently, with frequent but not constant fingering and handling. (AR 35, 138, 140). Given these parameters, the VE found that claimant could perform her past relevant work as a receptionist. (AR 35).

The second hypothetical was based upon a different agency medical consultant's report by Sandra Clancey, M.D., dated October 4, 2002. Dr. Clancey stated in this report that claimant could lift 20 pounds occasionally and 10 pounds frequently, but with only occasional fingering and handling and no frequent forceful gripping or grasping. (AR 146, 148). Given these parameters, the VE found that claimant could perform "a 50% erosion on past relevant work" as a receptionist.

(AR 36-37).

The third hypothetical presented by the ALJ to the VE was based on a consultative examination performed by Ralph Wood, M.D., on September 14, 2002. (AR 37, 180-82). In his report, Dr. Wood had stated that he was unsure how frequently claimant could lift 20 pounds, and he also did not report upon the extent of claimant's fingering and handling limitations. (AR 181). The VE therefore stated that this was not enough information upon which to give a meaningful assessment. (AR 37).

The final hypothetical presented by the ALJ was based on the report of claimant's treating physician, Danielle Myers, M.D. (AR 37-38, 221-25). In her report, Dr. Myers had stated that claimant could never lift 20 pounds, and only occasionally lift 10 pounds, and also that claimant was limited to only occasional fingering and grasping. (AR 222-23). Given a hypothetical with these restrictions, the VE essentially concluded that there were no available jobs in national economy. (AR 39-40).

In his written determination, the ALJ selected a residual functional capacity consistent with "light" work. He found claimant able to perform "a narrow range of light work involving occasional crawling and climbing, and no crouching, with limitations on pushing/pulling, frequent or forceful gripping, grasping or wrist torquing or prolonged keying or typing, and avoidance of concentrated exposure to fumes and other environmental pollutants." (AR 21). Given this RFC and the testimony of a vocational expert as adduced at the administrative hearing, the ALJ determined that claimant was "capable of performing other jobs which exist in significant numbers in the national economy." (AR 21). Specifically, "a significant number of receptionist jobs that are within the claimant's capacity and that exist in significant numbers in the national economy." (Id.) The ALJ therefore concluded that claimant was not disabled. (AR 22).

## ISSUES

Claimant's Opening Brief raised the following issues for consideration:

A. Whether the ALJ properly evaluated the evidence.

B. Whether the ALJ correctly found that claimant's impairments did not meet or equal a Listed impairment.

1    C.   Whether the vocational testimony was sufficient.

2    This Court must uphold the Commissioner's determination that claimant is not disabled if the
3    Commissioner applied the proper legal standards and there is substantial evidence in the record as a
4    whole to support the decision.

**DISCUSSION**

**A.   Evaluation of the Evidence**

Claimant asserts that the ALJ misstated and misapplied the evidence in the record. (Doc. 15, p. 4). Specifically, she protests the ALJ's conclusion that she was precluded only from doing "forceful" work activities. In the same vein, she asserts that ALJ Baker improperly disregarded the opinion of her treating physician insofar as that physician, Danielle Myers, M.D., did not preclude only "forceful" work in her diagnosis, nor did certain medical consultants. (Id.) Throughout her brief, claimant dwells on the ALJ's allegedly improper use of the "material term 'forceful.'" (Id.)

Claimant's protestations notwithstanding, the undersigned finds no error. To begin with, the term "forceful" is neither material nor relevant to the only past (and potential future) work at issue at claimant's hearing, namely, her work as a receptionist. (AR 35-37). Rather, the job of receptionist as set forth in the Dictionary of Occupational Titles ("DOT") presupposes a "sedentary" exertional level with the following additional capacity limitations (among others): frequent reaching, frequent handling and occasional fingering. DOT § 237.367-038. Thus, the ability to do such work simply does not turn on whether it is "forceful" in nature.

The "forceful" distinction being a red herring, the only substantive issue in the first argument of claimant's brief is whether ALJ Baker properly discounted the exertional limitations identified by one of claimant's treating physicians, Danielle Myers, M.D. (See Doc. 15, p. 4). Dr. Myers had opined that claimant was not able to lift over 10 pounds, and could only occasionally grasp and do fine manipulation, an opinion that, in light of VE Wetzel's testimony, would have returned a finding of "disabled." (See AR 37-40).

The courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821,

839 (9th Cir. 1996). A treating physician's opinion is given special weight because of his or her familiarity with a claimant's physical condition. Fair v. Bowen, 885 F.2d 597, 604-605 (9th Cir. 1989). In order to reject a treating physician's ultimate conclusions, the ALJ must supply "clear and convincing" reasons. Fair, 885 F.2d at 604-605. However, when contradicted by another doctor, the ALJ may reject a treating physician's opinion upon giving "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). The same test applies to examining physicians: The ALJ must give clear and convincing reasons for rejecting uncontradicted opinions, or "specific and legitimate reasons supported by substantial evidence in the record" for rejecting those opinions that have been contradicted. Lester, 81 F.3d at 830-31. Finally, as to the nature of the reasons deemed sufficient (to set aside a treating or examining physician's opinion), courts within the Ninth Circuit have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports that are based substantially on the claimant's subjective complaints of pain as specific legitimate reasons for disregarding a treating or examining physician's opinion. Flaten v. Secretary of Health & Human Svcs., 44 F.3d at 1453, 1463-64; Fair, 885 F.2d at 604.

In the instant case, ALJ Baker stated the following in rejecting the full import of Dr. Myer's exertional assessment:

> "A report of physical examination in April 2003 by Danielle Myers, M.D., produced no diagnoses other than bilateral wrist pain and osteopenia. Range of wrist motion remained full bilaterally, and Tinel's and Phalen's signs were negative. Rheumatoid factor and ANA testing was also negative. The reported objective findings are thus not considered fully supportive of the limitation to lifting/carrying of 10 pounds described by Dr. Myers, who conceded that the claimant remained able to do sitting and standing/walking without restriction, occasional grasping and manipulating bilaterally, and occasional reaching, handling, pushing/pulling, and climbing, with avoidance of dust due to allergies, but with no additional postural, environmental, or other restrictions." (AR 19).

It is evident from the above that the ALJ cited specific and legitimate reasons for discounting the full breadth of Dr. Myer's exertional limitations: they were supported neither by Dr. Myers' own objective examination nor by medical tests, all of which were "negative." (AR 19). This rationale also was consistent with other medical examinations and laboratory tests in the record showing

1    negative hand and wrist related pathologies.  See, e.g., AR 19 (reporting normal nerve conduction

2    and EMG studies by Dr. Clift).  Morgan v. Commissioner of Social Security Administration, 169

3    F.3d 595, 603 (9th Cir. 1999)(inconsistency between medical opinion and medical tests is an

4    appropriate basis upon which to discount such opinion).  Accordingly, the undersigned finds no

5    error.

6    **B.       Whether a Listed Impairment Existed**

7            Claimant asserts that her alleged impairment - osteopenia causing pain, stiffness, poor motion

8    and joint involvement in the upper extremities - qualifies as a Listed impairment under 20 C.F.R.

9    § 404 Subpt. P, App. 1, § 1.02.  (Doc. 15 at p. 5).  Claimant also protests that the ALJ did not assess

10   her weight for equivalency purposes.  (Id.)

11           The Court finds that claimant's assertions are unfounded.  It is claimant's burden to establish

12   that she meets a Listed impairment.  Tackett, 180 F.3d at 1098.  Moreover, in order to meet a Listing

13   of Impairments, a claimant must have every finding specified in that Listing.  20 C.F.R.

14   § 416.925(d).  In the instant case, ALJ Baker parsed and reported upon claimant's medical records in

15   considerable detail.  (AR 18-21).   All of the objective laboratory tests among those records - as

16   reported by the ALJ - were almost uniformly negative for upper extremity problems: (1) negative

17   Tinel's and Phalen's signs, negative Finkelstein maneuver, no electrodiagnostic evidence of bilateral

18   median mononeuropathies across the wrists (carpal tunnel syndrome), no electrodiagnostic evidence

19   of bilateral ulnar mononeuropathies across the wrists or the elbows (cubital tunnel syndrome), and no

20   electrodiagnostic evidence of peripheral polyneuropathy in October 2001 (AR 18, 164, 167),

21   negative rheumatoid factor and ANA test results repeatedly in 2001, 2002 and 2003 (AR 18-19, 177,

22   200-02), normal joints with minimal osteopenia, small cortical cysts in the capitate of the right wrist

23   and distal end of the first right metacarpal of the right hand, but no significant spur formation per x-

24   rays in February 2003 (AR 19, 203), bilateral osteopenia, but no evidence of erosion or joint space

25   narrowing, and no focal abnormality per x-rays in March 2003 (AR 19, 233), negative Tinel's and

26   Phalen's signs in April 2003 (AR 19, 221) and normal nerve conduction and EMG studies in August

27   2003 (AR 19, 244-45).  These objective, diagnostic findings patently fail to meet Listing 1.02, which

28   requires a major joint dysfunction characterized by gross anatomic deformity and, among other

things, documented "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis" of the affected joint resulting in either an inability to walk effectively or to perform fine and gross arm/hand movements effectively. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02.

Moreover, with respect to claimant's obesity, the ALJ reported the findings of each of claimant's physicians as to her weight-related issues. (AR 18-21). Notable among these is that only one physician - Dr. Lastufka - stated that claimant's obesity was an issue (bilateral knee pain secondary to degenerative joint disease from obesity), but without any corroborating x-ray findings. (AR 18, 155). Moreover, while claimant protested when the ALJ discounted the assessment of Dr. Myers, one of her treating physicians, as to her exertional capacity (Doc. 15 at p. 4), it bears noting that Dr. Myer's own diagnosis includes no reference to obesity as an impairment. (AR 221).

In light of these medical findings as accurately synopsized by the ALJ, the undersigned finds that the ALJ appropriately considered claimant's alleged upper extremity impairment, along with her weight, and that his determination that these did not meet or equal a Listed impairment was well supported by substantial evidence in the record. See Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005)("[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings").

C.  **Sufficiency of Vocational Testimony**

Claimant asserts that the hypothetical presented to the VE was improperly "vague and confusing, and did not include all elements of disability, including pain." (Doc. 15 at p. 5).

As noted in the ALJ's Findings, supra, ALJ Baker gave four different hypotheticals to the VE, not just one. (AR 35-40). Four different doctors, ranging from agency medical consultants to claimant's own treating physician, had issued written assessments of claimant's impairments. (Id.) The ALJ simply presented these to the VE in hypothetical format. (Id.) As the hypotheticals largely tracked the operative opinions of the four physicians, they were neither vague nor confusing, nor is there any indication that the VE himself found them to be unclear. Furthermore, while one of the

hypotheticals included the word "forceful" - as also stated in a diagnostic assessment by one consulting physician (AR 36, 148) - the term is not relevant to the position of "receptionist" as defined in the DOT and as considered by the VE. It was therefore of no moment. See DOT § 237.367-038.[2] Finally, the receptionist job as set forth in the DOT explicitly encompasses a range of physical demands, e.g., frequent "handling" is a demand that exists from 1/3 to 2/3 of the time. (Id.) The VE appropriately addressed claimant's particular limitations by "eroding" the number of open positions from 60,000 to 30,000 (AR 37), more than enough positions to enable a finding of "not disabled" at step five of the sequential analysis. See Barker v. Secretary of Health and Human Services, 882 F.2d 1474, 1479-80 (9th Cir. 1989)(as few as 1,266 jobs constitutes a "significant number" of available positions within the national economy). Accordingly, the undersigned finds no error by the ALJ.

## CONCLUSION AND RECOMMENDATIONS

For the reasons discussed above, this Court finds no error in the ALJ's analysis, and finds that the ALJ properly concluded claimant is not disabled. This Court further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court makes the following RECOMMENDATIONS:

1. To DENY Claimant's appeal from the administrative decision of the Commissioner of Social Security (Doc. 1); and

2. To DIRECT the Clerk of the Court to enter judgment as a matter of law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against claimant Stephanie Soliz.

This Report and Recommendations is submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304. No later than thirty (30) days after service of the Report and Recommendations, any party may file written objections to the Report and Recommendations with the Court and serve a copy on all parties and the Magistrate

---

[2] It is true, as claimant asserts, that none of the hypotheticals included "pain" as an element. (See AR-38-39). However, the ALJ explicitly considered claimant's subjective complaints and found them to be inconsistent with her level of treatment and her medications (AR 20), hence he did not include such complaints in his hypotheticals. (AR 20). Claimant has not asserted any error in the ALJ's credibility assessment.

14

1  Judge and otherwise in compliance with this Court's Local Rule 72-304(b).  Such a document should
2  be captioned "Objections to Magistrate Judge's Report and Recommendations."  Responses to
3  objections shall be filed and served no later than ten (10) days after service of the objections and
4  otherwise in compliance with this Court's Local Rule 72-304(d).  A copy of the responses shall be
5  served on the Magistrate Judge.  The District Judge will review the Magistrate Judge's Report and
6  Recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file
7  objections within the specified time may waive the right to appeal the District Judge's order.
8  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10  IT IS SO ORDERED.
11  Dated:   **March 29, 2006**                              **/s/ Theresa A. Goldner**
    **j6eb3d**                                              UNITED STATES MAGISTRATE JUDGE